United States District Court
Southern District of Ohio
Western Division

| | |
|---|---|
| Adam Hall, | Case No. 1:17cv627 |
| Plaintiff, | Judge William O. Bertelsman |
| v. | Mag. Judge Stephanie K. Bowman |
| Correction Healthcare Companies, Inc., et al. | |
| Defendants. | |

## ORDER

This matter is currently before the Court based upon the filing of a motion to compel by Plaintiff. (Doc. 22). Defendant Correction Healthcare Companies (hereinafter "Defendant Healthcare" or "CHC") filed a timely response in opposition to the pending motion (Doc. 23) to which Plaintiff replied. (Doc. 24). Prior to the filing of the motion to compel, the court conducted a conference call with the parties in an attempt to resolve various discovery disputes. The remaining unresolved disputes are the subject of the motion to compel.

Plaintiff seeks an order compelling Defendant Healthcare to produce the following records:

RFPD #4. All documents authored by jail staff reviewing the medical treatment of Adam Hall. This includes post-incident reports authored to CHC supervisors and any reports authored in response to the need for Mr. Hall to be sent to an outside hospital.

RFPD #8. All Documents from Quarterly CQI Meetings with Warren County Officials from January 1, 2014- December 31, 2017.

RFPD #9. [For period 1/1/14 – 12/31/17], All Internal or External Audits or

1

Inspection Reports Concerning CHC's Provision of Healthcare Services in the Warren County Jail.

RFPD #14. Produce all complaints, settlement agreements, consent orders, or judgments related to any litigation filed or threatened to be filed against CHC or any of its employees regarding medical care at any Ohio jail since January 1, 2008.

Defendant Healthcare objects based upon the peer-review privilege as to RFPD # 4, 8 and 9 and relevance as to RFPD#14. For the reasons set forth below, the motion will be GRANTED in part and DENIED in part.

A. Factual Background

Mr. Hall's complaint alleges violations of 42 U.S.C. §1983, malpractice by the physician and nurses, and negligence. Mr. Hall was a 37 year old man with two children. (Doc. 1, ¶¶ 13, 15). He suffered from osteomyelitis and was a daily IV heroin user. (Id. at ¶28). On October 6, 2016 Mr. Hall was incarcerated at the Warren County Jail for the failure to pay child support. (Id. at ¶16). During his intake medical screening on October 7th, Mr. Hall informed Nurse Frost that he had been hospitalized with osteomyelitis for eight days several months earlier and that he was a daily IV heroin user. (Id. at ¶28). This medical information was not recorded in Mr. Hall's medical record and his hospitalization records were not obtained. (Id. at ¶29, 30).

Later that morning Nurse Rose noted that Mr. Hall was experiencing severe neck pain, back pain and restrictions in his range of motion – symptoms consistent with osteomyelitis. (Id. at ¶31, 32). Mr. Hall's symptoms worsened and he regularly complained to corrections and medical staff, even reminding them that he had been hospitalized for osteomyelitis. (Id. at ¶37, 38). No nurse to whom he spoke ever made a note of his condition in his record, nor made any attempt to treat him in any way other

than providing Ibuprofen and ice. (Id. at ¶ 33, 35, 39, 41, 43).

The record shows that on October 9, 2016 Nurse Kinder updated Dr. Baig on Mr. Hall's condition, informing him that Mr. Hall was still in pain, had a history of osteomyelitis, and was unable to sit or stand for long periods of time. Dr. Baig ordered the nurses to monitor Mr. Hall for fever and changes in mental status. (Doc. 22-2, p28). The defendant nurses failed to follow the instructions of Dr. Baig and failed to monitor Mr. Hall for fever. (Doc. 22-1, p92). When his temperature was finally taken on October 12, 2016, he indeed had a fever. Ultimately, Mr. Hall saw Dr. Baig later that day. Mr. Hall was then sent him to the emergency room. (Id. at ¶44, 45). Mr. Hall was diagnosed with osteomyelitis and cervical discitis. He had an abscess on his spine which required emergency surgery and then a follow up surgery. He is now paralyzed below the waist. (Id. ¶46-48). Mr. Hall alleges that the paralysis and surgery would have been avoided if he was treated with appropriate antibiotics before October 12, 2016. (Id. at ¶49).

B. Peer Review Privilege

Defendant Healthcare objects to the production of the documents requested in RFPD# 4, 8 and 9 on the basis of protection by the medical peer review privilege. Defendant Healthcare points out that Ohio has such a privilege and that a federal common law privilege has been created elsewhere and should be so created and applied here. It is Defendant Healthcare's burden to establish that the privilege exists and applies herein. See *Allen v. Cuyahoga County*, 1:12cv1659, 2014 U.S. Dist. LEXIS 13622, *8 (N.D. Ohio Feb 4, 2014) citing *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,* 293 F.3d 289, 294 (6th Cir. 2002), cert. dismissed, 539 U.S. 977 (2003).

"The Supreme Court has expressed a reluctance to create a new evidentiary privilege, unless it 'promotes sufficiently important interests to outweigh the need for probative evidence.'" *Allen v. Cuyahoga Cty.*, No. 1:12CV1659, 2014 U.S. Dist. LEXIS 13622, *10 (N.D. Ohio Feb. 4, 2014) *citing University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990). The U.S. Supreme Court has expressed reluctance to expand the parameters of privilege law in recent years and many federal courts have declined to recognize a number of proposed privileges. *Id.* at *11 *citing In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F.Supp.2d 201, 208 n.8 (D.D.C. 2005)(citing cases). "The weight of authority in the Sixth Circuit and elsewhere is that no medical peer review privilege exists under federal common law." *Id. citing Guinn v. Mount Carmel Health Sys.*, No. 2:09CV0226, 2010 U.S. Dist. LEXIS 85152, 2010 WL 2927254, at *2 (S.D. Ohio Jul 23, 2010). See also *Adkins v. Christie*, 488 F.3d 1324, 1328-1330 (11th Cir. 2007), cert. denied, 552 U.S. 1131, 128 S. Ct. 903, 169 L. Ed. 2d 785 (2008) (medical peer review process does not warrant extraordinary protection of privilege in federal civil rights cases); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 289 (4th Cir. 2001); *KD ex rel. Dieffenbach v. United States*, 715 F.Supp.2d 587, 592 (D. Del. 2010) (balance of authority weighs against recognition of medical peer review privilege); *Nilavar v. Mercy Health Sys., W. Ohio*, 210 F.R.D. 597, 601 (S.D. Ohio 2002); *Syposs v. United States*, 179 F.R.D. 406, 411-412 (W.D.N.Y. 1998). But see *Sevilla v. United States*, 852 F.Supp.2d 1057, 1068-1069 (N.D. Ill. 2012) (contra); *Veith v. Portage Cty.*, 2012 U.S. Dist. LEXIS 146333, *4 (N.D. Ohio Oct. 11, 2012) (contra).

It is clear to the Court that the documents requested in RFPD 4, 8 and 9 are

relevant for the reasons more particularly set forth in Plaintiff's motion.[1] As such, unless a privilege applies, the documents shall be produced. *See generally* Federal Rule of Evidence 501. A federal common law privilege should not be created and applied unless it "promotes sufficiently important interests to outweigh the need for probative evidence…." *Veith v. Portage Cty.*, 2012 U.S. Dist. LEXIS 146333, *4 (N.D. Ohio Oct. 11, 2012). In making this determination the court must consider whether the privilege serves private and public interests, the evidentiary benefit that would result from denying the privilege and if the states recognize the privilege. *Jaffee v. Redmond*, 518 U.S. 1, 10-13 (1996).

Defendant Healthcare argues that for the peer review system to work effectively the integrity of the process must remain intact. Thus, the process must remain confidential so that medical professionals will engage in full and frank expressions of opinion to advance the quality of medical care - a substantial benefit to the public at large. However, this case is not a "typical" medical malpractice case where the patient/plaintiff is an individual with choices as to when to get medical care and where to seek such medical care. Here, Mr. Hall was an inmate locked up at the county jail for failing to pay child support. He was not free to seek medical care as soon as he desired such care. He was confined to a cell and had to rely on jail staff to evaluate him, treat him and relay his symptoms to a doctor who ultimately did not see him for several days. Nor was he free to choose the doctor or medical facility. Because of his confinement, he was at the mercy

---

[1] Defendant Healthcare did not argue that the documents requested in RFPD #4, 8 and 9 are not relevant.

of others.  It is for this reason that the harm to the peer review process as alleged by Defendant is not outweighed by the benefit to Plaintiff and the public in ensuring adequate care and training of medical staff in local jails.

Although the Plaintiff may likely be able to prove his medical malpractice claim without this evidence, the evidentiary benefit that would result from denying the privilege would aid Plaintiff in his §1983 claim and his negligence claim wherein he alleges, among other things, the County and Defendant Healthcare were negligent in their training and supervisory compacities.

Finally, it must be noted that Ohio, as well as most other states, does have a state law peer review privilege.  *See* O.R.C. §2305.252.  Given the factors to consider set forth in *Jaffee,* this would weigh in favor of the privilege. However, established case law also supports the proposition that a state law peer review privilege does not apply to a case that involves federal and supplemental state law claims. *see Hancock v. Dodson*, 958 F.2d 1367,1373 (6th Cir. 1992).

Taking the three *Jaffe* f*actors* into consideration, I find that the peer review privilege should not be created.  In a factually similar case where a medical peer review privilege was not created, Magistrate Judge Kenneth McHargh held, "given that privileges are strongly disfavored in federal practice, the liberal view of discovery in the federal rules, and the lack of a historical or statutory basis for a medical peer review privilege under federal law, the court is disinclined to find that the federal common law supports the existence or application of a medical peer review privilege here."  *Allen*, 2014 U.S. Dist. LEXIS 13622, *12 (citations omitted).  I agree.

Moreover, just as the court in *Allen* found *Veith v. Portage County, No. 5:11cv2542, 2012 U.S. Dist. LEXIS 146333* (N.D. Ohio Oct .11, 2012), to be unpersuasive, so do I. *Allen*, 2014 U.S. Dist. LEXIS 13622 at *16-17. *Veith* did not involve an inmate and did not address allegations of a failure to train and/or supervise. Defendant Healthcare also cites to *Angela Lowe v. Cuyahoga Cty. Bd. Of Comm.,* No. 1:08cv01139 (N.D. Ohio) (Doc. 82) (Fed. 22, 2010) asserting that the Court denied a similar motion to compel by notationally denying the motion as follows, "Motion Denied. It is evident that such requested material is privileged." However, the full notational order goes on to state, "Court may re-visit request if further information is developed that would warrant a re-evaluation of this ruling." Id. With no analysis given as to why such requested material is privileged and with the parties reaching a settlement a few short months later, this Court cannot give this case any precedential weight. In addition, Defendant Healthcare also cites to *Gulley v. Lapaglia*, No. 3:12cv371, 2014 U.S. Dist. LEXIS 7074, at *4 (E.D. Tenn. Jan. 21, 2014) to support its argument. However, *Gulley* is not helpful to the Defendant. In *Gulley*, the Court granted the motion to compel, in part, and ordered further briefing. Specifically, the Court stated, "[g]iven the varied case law on the privilege issue presented and the importance of this issue to both parties, the Court finds that it is appropriate to compel Methodist to identify the persons and documents requested and to permit additional briefing following such identification. *Id.* at *4-5. Other than *Allen* and *Gulley*, no other court in the Sixth Circuit has cited to *Veith*. This Court finds *Veith, Lowe* and *Gulley* to be distinguishable and not binding precedent on this Court.

Thus, Defendant Healthcare shall produce the documents responsive to RFPD #4, 8 and 9.

C. Confidential Settlement Agreements

Plaintiff has also requested all complaints, settlement agreements, consent orders or judgments related to any litigation filed or threatened to be filed against Defendant Healthcare or any of its employees regarding medical care at any Ohio jail since January 1, 2008. Defendant Healthcare objects to the request for the production of settlement agreements as not relevant to the subject matter of this litigation. Plaintiff argues that due to a standard indemnity provision in Defendant Healthcare's contract with Warren County that the County is relieved of any real incentive to be vigilant on behalf of its inmates. Plaintiff goes on to argue that "[r]eviewing the actual settlements paid on claims to inmates and/or their estates will help verify the disincentive for the County to supervise CHC on its performance under the contract." Doc. 24, p7. The Court finds that the request is not relevant as it relates to all Ohio jails and not just the Warren County Jail. Thus, Defendant Healthcare shall produce any responsive settlement agreements related to any litigation filed or threatened to be filed against Defendant Healthcare or any of its employees regarding medical care at the Warren County jail since January 1, 2008.

D. Conclusion

Thus, the motion to compel as to RFPD #4, 8 and 9 is GRANTED and RFPD #14 is GRANTED IN PART AND DENIED IN PART. All documents ordered to be produced shall be produced within 14 days of this order and be subject to the stipulated protective order.

8

IT IS SO ORDERED.

                                            *s/ Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge